UNITED STATES DISTRICT COURT
DISTRICT COURT OF MINNESOTA
Cr.19-313 (ECT-TNL)

---------------------------------------------

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>vs.<br><br>SANTOS GOMEZ PEREZ,<br>　　　　Defendant. | **MEMORANDUM IN SUPPORT OF<br>MOTIONS TO SUPPRESS EVIDENCE** |

-------------------------------------------

　　　The Defendant, Santos Gomez Perez, by and through his attorney, Kevin M. O'Brien, has moved the Court to suppress any statements made by him to law enforcement on March 14 and March 15 of 2019, as well as evidence derived from March 14, 2019 illegal search and seizure, which violates the Defendant's rights under the Fourth Amendment to the United States Constitution, Fed. R. Crim. P. 12 (b) (3). (See ECF 52 and 53)

### SUPPRESSION OF STATEMENTS

　　　Mr. Gomez asks the Court to suppress evidence obtained as a result of police interrogation of him occurring on March 14, 2019 at Olympic Auto Center and March 15, 2019 at the Ramsey County police station. He urges the Court to find that the coerced, involuntary statements he made following his March 14, 2019 arrest should be suppressed along with the statements he made the following day to

1

the same law enforcement officer as those statements were obtained as a result of the prior days' statements and are thus fruit of the poisonous tree.

As a threshold matter, the defendant's statements of March 14, 2019 were not prefaced by a Miranda warning. Transcript of February 3, 2022 Suppression Hearing cited hereafter as T. (T. p. 71 at l. 9-11) The defendant's statements of the following day, were to the contrary, prefaced by the requisite Miranda warning in the defendant's native Spanish. (Government Exhibit 3)

At about 1:00 or 1:30 in the afternoon of March 14, 2019, while the defendant was handcuffed and in custody at the Olympic Auto Center, law enforcement claims that the defendant began to provide information about firearms that had been delivered to him. (T. p. 27, l.22 – p. 28, l. 20) The officer testifying at the suppression hearing, Sergeant Rigoberto Aguire, stated that he did not feel it necessary to administer a Miranda warning because the defendant was volunteering statements in hope of getting favorable treatment from law enforcement. (T. p. 71 at l. 9-16,) In full candor, the government conceded early in the testimony of Sergeant Aguire that Mr. Gomez was detained and in custody shortly after the police entered Olympic Auto Center. (T. p. 25 at l. 1-3). The defendant was put into handcuffs shortly after the police entered the building. (T. p. 24, l. 7 – 13) The conversation between the defendant and Sergeant Aguire was

not recorded. Nor did Sergeant Aguire have his video cam activated when speaking with the defendant. ( T. p. 33 at l. 7 – 11)32

Miranda warnings must be given when a suspect is both, in custody and subject to government interrogation. *Ill. v. Powers*, 496 U.S. 292 (1990). Given the government's concession as to custody, focus falls on the second factor, i.e. , were the defendant's statements in response to law enforcement interrogation. In *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1990), the Supreme Court defined "interrogation" as "express questioning or its functional equivalent". The functional equivalent of interrogation consists of "word or actions on the part of the police … that are likely to elicit an incriminating response from the suspect". (Id at 301)

Sergeant Aguire's own testimony demonstrates that he questioned the defendant.

- T. p. 28 l. 21-25. "Anything I asked him was in relation to where is the -- for example, what location are they at?"

- Question from the government: "So there was some questioning on your part after the defendant's initial statement"? Response from Sergeant Aguire, "Yes". (T. p. 32, l. 2-5)

- " I asked him follow up questions to clarify where they're going to be transported". (T. p. 32, l. 15 -16)

- In response to a question as to when he first spoke with the defendant, Sergeant Aguire stated: "I told him he was arrested or going to jail for narcotics prior to our conversation where I was told, hey, he wants to talk to you". (T. p. 66 , l. 10 - 104)

Sergeant Aguire recognized that he had interrogated the defendant at Olympic Auto Care, at T. p. 72, l. 6-7. " I need some clarifying questions". Sgt. Aguire clearly asked these questions because he wanted answers concerning firearms . He could reasonably have known that any response to his questioning would include incriminating statements and that Miranda warnings were required. See. *U. S. v. Hernandez,* 476 Fed 3d, (9th Cir. 2007) for its holding that Miranda warnings are required where the questioning officer should know that questions could lead to incriminating responses. .

Defendant Gomez urges suppression of his custodial statements made on March 14, 2019 in response to questioning not prefaced by Miranda warnings on the grounds that his statements were not voluntary and were the product of coercion. As he was in custody, Gomez was subject to reinforcing pressure of custody and interrogation which overcame his will.

To determine whether a defendant's statement is the product of coercion and therefore involuntary, consideration is given to:

(1) The location of the questioning. In the present case, this was done at the defendant's place of work, while handcuffed and detained.

(2) Whether Miranda warning were given. Clearly in the present case, they were not.

(3) Whether the accused initiated contact with law enforcement officials. In the present case, this point is in dispute. Sergeant Aguire's claim that the accused initiated contact is subject to doubt due to the numerous questions that he initiated to the defendant.

As further grounds for a finding of involuntariness of any March 14, 2019 statements, defendant Gomez highlights his lack of English skills and his drug problem.

Given the totality of the circumstances, defendant Gomez urges the Court to suppress statements obtained from him on March 14, 2019 at the Olympic Auto Center.

He also urges suppression of Mirandized statements he made the following day to Sergeant Aguire at the Ramsey County police station while in continued custody. The questioning done by Sergeant Agure at the police station was done as a follow up to information obtained the previous day in violation of defendant Gomez's right to be free from coerced questioning.

A second interrogation, albeit with a Miranda warning, should be suppressed where it is preceded by a coerced line of questioning. *Mo. v. Seibert*, 542 U.S. 600 (2004). This is especially true where the questioning is carried out by the same officers who did the first interrogation. *U. S. v. Green*, 541 U.S. F3d. 176 (3rd Cir. 2008)

## SUPPRESSION OF EVIDENCE FROM SEARCH AND SEIZURE

Mr. Gomez asks the Court is suppress evidence obtained from a search and seizure at his work site on March 14, 2019, specifically fourteen firearms found in metal cabinet at Olympic Auto Center.

The express purpose of the Fourth Amendment is to secure the houses, papers, and effects of this nation's citizens from government intrusion. U.S. Const. Amend. IV. The Amendment contains two separate clauses: (1) a prohibition against unreasonable searches and seizures, and (2) a requirement that probable cause support each warrant issued.

"The critical element in a reasonable search is not that the owner of the property is suspected of crime, but that there is a reasonable basis to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Probable cause means that, given all the circumstances set forth in the affidavit,

there exists sufficient information to conclude that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983)

In order for Defendant Gomez to have standing to challenge the search of Olympic Auto Center, he must have a subjective expectation of privacy in that location. The Supreme Court has adopted a two part test to determine whether a person has a legitimate expectation of privacy in a place or thing. *United States v. Katz* 389 U.S. 347 (1967): the individual must have a subjective expectation of privacy in the place or thing, and society must recognize that expectation as objectively reasonable. (id at 361). Defendant Gomez, as an employee of Olympic Auto Center, had a reasonable expectation of privacy in his place of work.

Testimony at the February 3, 2022 hearing on Defendant's motions to suppress evidence revealed Olympic Auto Center is a car repair garage with two distinct areas; a lobby area about 14 x 14 feet with chairs and a bathroom, separated from the larger garage area where car repairs were carried out. at(T. p. 63 at l. 2-9 and p.21 at l. 19-24). Filing cabinets and other containers were located in the center of the larger space, including the filing cabinet were firearms were found. (T. p. 22 at l. 14-25) On March 14, 2019 when police entered the Olympic Auto Center, Sergeant Aguire, saw the defendant and assumed that he was working. (T. p. 63 at l. 12-15).

The defendant's reasonable of expectation stems from his presence at his place of work where the search of the firearms was carried out. While acknowledging no ownership interest in the Olympic Auto Center, the defendant undeniably carried out his profession as a mechanic in the work area of the shop. He logically did not work in the customer lobby area where his expectation of privacy would be diminished by the coming and going of customers. He was present in the work area within a car repair garage, not within an area to which customers would be expected, or even allowed, to enter. See. *U. S. v. Chavez*, 169 F3d 687, 690-91 (11th Cir. 1999) and its holding that although the defendant did not own or rent a warehouse where he worked, he never-the-less enjoyed a subjective expectation of privacy because he kept personal items there.

Government Exhibit 1 is a search warrant and application for search of the Olympic Auto Center authoring search for two mobile tracking devices. These devices measure about 5"x 4"x 2". (T. p19, l. 1-3)

Evidence adduced at the suppression hearing, shows that while searching for these devices, law enforcement found bags containing 14 firearms including long guns, as in rifles and shotguns. (T. p 39 , l. 23).

At the time the bags with the weapons were found, the tracking devices had not been located. Defense counsel stipulated as such. (T. p. 87, l. 20-24)

The government, in turn, concedes that the police found the guns and applied for the search warrant after having found the guns (T. p. 81, l. 21-24 ) Logic says that the police must have opened the bags to determine their contents as well before applying for the warrant.

The defense contends that by opening the bags that the police illegally extended their authority to search for tracking devices, given the obvious physical disparity between the relatively small tracking devices and the obviously larger firearms. The guns were located in bags which were not transparent, not in plain view. (T. p.79, l. 4-5). Law enforcement had to know that when they opened the bags to get at the firearms, that they were not on the trail of the tracking devices, but rather were searching for the firearms that they suspected as a result of Sergeant Aguire's illegal questioning of the defendant.

As a general rule, police may not exceed the terms of the authorizing warrant when conducting a search. If the executing officers exceed the scope of a search warrant, the seized evidence may be suppressed. *U.S. v. Robbins*, 21 F. 3d. 297 (8th Cir. 1994)

Defendant Gomez urges suppression of the 14 firearms seized on March 14, 2019 on the grounds that law enforcement knowingly exceeded the search for tracking devices when they seized opaque bags containing firearms and opened the bags prior to obtaining a search warrant for the firearms.

Respectfully submitted,

March 7, 2022                                      Kevin M. O'Brien #80561
                                                   Attorney for defendant Gomez