UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | File No. 19-cr-313-1 (ECT/TNL) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Santos Gomez Perez, | |
| Defendant. | |

Katharine T. Buzicky, Craig R. Baune, and Thomas M. Hollenhorst, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Santos Gomez Perez, *pro se*.

___

Representing himself, Santos Gomez Perez has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 172. On August 18, 2022, following a three-day trial, a jury found Mr. Gomez Perez guilty of possession of firearms by an illegal alien in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). ECF Nos. 1, 103, 107. On December 1, 2022, Mr. Gomez Perez was sentenced to 90 months' imprisonment, followed by three years of supervised release. ECF No. 135. Mr. Gomez Perez appealed his conviction and sentence. ECF No. 138. The Eighth Circuit affirmed, ECF No. 163, and the mandate issued January 23, 2024, ECF No. 164. Mr. Gomez Perez is currently serving his sentence at Federal Correctional Institution Oakdale II, in Oakdale, Louisiana; his projected release date is April 21, 2027. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Dec. 31, 2024). Mr. Gomez Perez claims he

received ineffective assistance of counsel. ECF No. 172. The motion will be denied because Mr. Gomez Perez fails to show that his counsel's performance was deficient.

The Eighth Circuit described the facts and legal bases supporting Mr. Gomez Perez's conviction in its opinion affirming the conviction and sentence:

> Gomez Perez worked in an auto shop. When officers investigating a drug-trafficking case came in one day, they were in for a surprise. In a storage cabinet were bags and boxes full of guns, high-capacity magazines, and bulletproof vests. Gomez Perez's defense was that he did not know they were there.
>
> The jury did not have to believe it. *See United States v. Casteel*, 717 F.3d 635, 644 (8th Cir. 2013) (explaining that "[w]e review the sufficiency of the evidence de novo . . . and accept[] all reasonable inferences that support the verdict" (citation omitted)). Gomez Perez, after all, had started acting suspiciously shortly after the officers arrived. He told them about "a stash" of guns hidden "somewhere else" in the city and grew nervous as they approached the cabinet. And then, just as they opened it, he spontaneously offered to show them what was inside. From this evidence, it was reasonable for the jury to infer that he knew about the guns all along and was only pretending to cooperate to hide his own culpability. *See United States v. Smith*, 508 F.3d 861, 866–67 (8th Cir. 2007) (noting that "knowledge . . . combined with control is constructive possession" and the former "is generally established through circumstantial evidence" (citations omitted)).

*United States v. Gomez Perez*, No. 22-3577, 2023 WL 8433556, at *1 (8th Cir. Dec. 5, 2023).

Mr. Gomez Perez's motion is difficult to follow. Six contentions seem clear enough. Mr. Gomez Perez claims his trial counsel was deficient for failing to (1) challenge his March 14, 2019 arrest; (2) challenge the search of the auto shop; (3) move to dismiss the indictment due to an alleged violation of Federal Rule of Criminal Procedure 5(a); (4)

2

move to dismiss the indictment due to a violation of Mr. Gomez Perez's speedy trial rights; (5) raise a statute-of-limitations challenge; and (6) address prosecutorial misconduct. ECF Nos. 172, 173. Other contentions are vague, conclusory, or both, and they will not be considered. *See* ECF No. 173.[1]

Begin with the settled rules governing ineffective-assistance claims. To prevail on a claim for ineffective assistance of counsel, Mr. Gomez Perez must establish that his counsel's performance "fell below an objective standard of reasonableness," and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Mr. Gomez Perez "must show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). Review of counsel's performance is "highly deferential," with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 446 U.S. at 689. "To overcome that presumption, [Mr. Gomez Perez] must

---

[1] Documents cited as "ECF No. 172-1" are documents Mr. Gomez Perez filed to support his § 2255 motion. Exhibits submitted during the suppression hearing are referred to as "Mot. Ex. #." "Gov't-#" Exhibits are the Government's trial exhibits. "D-#" Exhibits are Mr. Gomez Perez's trial exhibits. For trial exhibits, cited page numbers refer to the offering party's stamped exhibit page numbering. Trial Transcripts ("Trial Tr.") are docketed at ECF Nos. 151 (vol. 1, pp. 1–168), 153 (vol. 2, pp. 169–264), 154 (vol. 3, pp. 266–77), and are paginated consecutively throughout those three volumes. Trial Transcripts will be cited by transcript page number, lines, and the testifying witness's identity. The Suppression Hearing Transcript ("Mot. Tr.") is docketed at ECF No. 62. Like the Trial Transcripts, the Suppression Hearing Transcript will be cited by transcript page number, lines, and the testifying witness's identity. The pagination for all documents, except for the Trial Transcripts and the Suppression Hearing Transcript, refers to the ECF pagination in the upper right-hand corner of the document, not the document's original pagination.

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . , a reasonable probability meaning a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (cleaned up). "Mere conclusory allegations will not suffice." *Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987) ("In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim.").

(1) Mr. Gomez Perez claims he was arrested on March 14, 2019, without probable cause in violation of the Fourth Amendment. ECF No. 172 at 4; ECF No. 173 at 9. Mr. Gomez Perez's trial counsel did not bring a Fourth Amendment challenge to his arrest, and Mr. Gomez Perez claims this was a failure on the part of his counsel to "adequately investigate and raise the issue." ECF No. 172 at 4.

When a defendant bases his ineffective assistance of counsel claim on a claim that his attorney "fail[ed] to litigate a Fourth Amendment claim competently . . . the defendant must also prove that his Fourth Amendment claim is meritorious." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also United States v. Luke*, 686 F.3d 600, 605 (8th Cir. 2012) ("When a defendant claims that counsel was ineffective by failing to litigate a Fourth Amendment challenge to a search and seizure, the defendant must prove that the claim is meritorious." (citing *Kimmelman*, 477 U.S. at 375)). "Counsel is not ineffective for failing to pursue a motion . . . that he reasonably believes would be futile." *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

4

Mr. Gomez Perez's Fourth Amendment challenge to his March 14 arrest is frivolous, meaning counsel could not have been deficient for failing to raise the challenge. Mr. Gomez Perez argues that officers had not identified him as a person involved in a controlled-buy operation on October 2, 2018, and therefore, lacked probable cause to arrest him. *See* ECF No. 173 at 15, 17–18, 20–21. This assertion is plainly contradicted by the documents Mr. Gomez Perez filed in support of his motion. They show he was identified as a participant in the controlled-buy operation several months prior to his March 14 arrest. ECF No. 172-1 at 30 (stating that on November 7, 2018, law enforcement showed a photograph of Mr. Gomez Perez to the confidential informant involved in the controlled-buy operation, who confirmed that Mr. Gomez Perez was the person who sold the methamphetamine).

Mr. Gomez Perez also argues that because several law enforcement agencies were involved in the narcotics investigation and the auto shop search, the collective knowledge doctrine cannot apply. ECF No. 173 at 16–17. Mr. Gomez Perez misunderstands the doctrine. The collective knowledge doctrine "applies irrespective of whether cooperating law enforcement officers are in different departments." *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) (citing *United States v. Hensley*, 469 U.S. 221, 223 (1985)); *see also United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015) ("The collective knowledge doctrine allows officers within an agency or officers from different agencies working together to effectuate constitutionally permissible searches and seizures."). The fact that several law enforcement agencies were involved in the narcotics investigation does not bar application of the collective knowledge doctrine.

Though Mr. Gomez Perez is correct that application of the doctrine requires "some degree of communication between the officer who possesses the incriminating knowledge and the officer who does not," the purpose of requiring such communication is to "distinguish between officers functioning as a search team and officers acting as independent actors who merely happen to be investigating the same subject." *United States v. Banks*, 514 F.3d 769, 776 (8th Cir. 2008) (internal quotation omitted). "When officers function as a search team, it is appropriate to judge probable cause upon the basis of their combined knowledge, because 'we presume that the officers have shared relevant knowledge which informs the decision to seize evidence or to detain a particular person.'" *Id.* (quoting *United States v. O'Connell*, 841 F.2d 1408, 1419 (8th Cir. 1988)). Here, exhibits admitted into evidence show there were communications between the officers involved in the narcotics investigation and the auto-shop search. For example, search warrant affidavits submitted by Deputy Ferrian of the Ramsey County Sheriff's Department—who was involved in the auto shop search, ECF No. 172-1 at 32—indicate he "spoke with St. Paul Police Officer Gleason," who was involved in the narcotics investigation.[2] Mot. Exs. 1, 2.

(2) Mr. Gomez Perez argues there was no probable cause to issue the warrants to search the auto shop, and that his counsel was deficient for failing to challenge this. ECF No. 173 at 18–25. However, counsel *did* challenge the search of the auto shop, and this challenge was rejected. *United States v. Gomez Perez*, No. 19-cr-313 (ECT/TNL), 2022

---

[2]   It also appears Officer Gleason was involved in the auto shop search. *See* ECF No. 172-1 at 32.

WL 2208324, at *1 (D. Minn. June 21, 2022). Mr. Gomez Perez's basis for claiming that the search violated the Fourth Amendment is the same he uses to challenge his arrest. *See* ECF No. 173 at 19–21. However, these claims do not affect the standing analysis underlying the rejection of counsel's challenge in any way. Mr. Gomez Perez has not met his burden to show his Fourth Amendment challenge would be meritorious.

(3) Mr. Gomez Perez argues that counsel should have moved to dismiss the indictment. ECF No. 173 at 28, 30. To support this contention, Mr. Gomez Perez argues the Government violated Federal Rule of Criminal Procedure 5(a) because he was not brought before a magistrate judge after his arrest on March 14, 2019. *Id.* at 27.

Rule 5(a)(1)(A) requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." "Rule 5(a) applies only to persons arrested and held under federal law." *United States v. Cooke*, 853 F.3d 464, 470 (8th Cir. 2017) (quoting *United States v. Elliott*, 435 F.2d 1013, 1015 (8th Cir. 1970)). "Rule 5 does not apply where the defendant has been arrested by local authorities and is in their sole custody," unless "there is evidence indicating that the arrest and detention by the state official were at the request of federal authorities or for the purpose of assisting them." *Id.* (cleaned up).

The record does not show—and Mr. Gomez Perez does not allege—that he was charged with any federal crime until December 5, 2019, or that he was arrested for a federal crime until September 2021. *See* ECF No. 172-1 at 5–9 (evidencing Mr. Gomez Perez was arrested by the St. Paul Police Department on March 14, 2019). No facts suggest Mr.

Gomez Perez's March 14 arrest was at the request of federal officers or meant to assist them. Therefore, counsel was not deficient for failing to move to dismiss the indictment based on a violation of Rule 5(a).

(4) Mr. Gomez Perez argues that counsel was ineffective because he did not assert a challenge under the "Minnesota speedy trial rule's 180 days deadline." ECF No. 173 at 28. More specifically, Mr. Gomez Perez argues his speedy trial rights were violated because he was not indicted on the charge of possession of a firearm by an illegal alien until December 5, 2019, nearly nine months after he was arrested (and released) on the alleged narcotics violation on March 14, 2019. *Id.* at 27. Again, this claim is frivolous.

Mr. Gomez Perez seems to confuse the Interstate Agreement on Detainers, Minn. Stat. § 629.294, with the Speedy Trial Act, 18 U.S.C. § 3161. *See* ECF No. 173 at 28 (referencing "the Minnesota speedy trial rule's 180 days deadline"). The Interstate Agreement on Detainer's 180-day speedy trial deadline applies

> [w]henever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner.

Minn. Stat. § 629.294, art. III(a). This statute did not apply to Mr. Gomez Perez's case. The Speedy Trial Act contains the applicable limitations.

Under the Speedy Trial Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such

charges." 18 U.S.C. § 3161(b). "[A]bsent collusion between state and federal authorities, a state arrest does not activate the requirements of the [Speedy Trial Act]." *United States v. Sims*, 779 F.2d 16, 17 (8th Cir. 1985); *see also United States v. Lewis*, 732 F.3d 6, 11 (1st Cir. 2013); *United States v. Alvarado-Linares*, 698 F. App'x 969, 973 (11th Cir. 2017)). Indeed, a "state arrest does not affect the speedy trial analysis on a federal charge, 'even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense.'" *United States v. Garner*, 32 F.3d 1305, 1309 (8th Cir. 1994) (quoting *United States v. Beede*, 974 F.2d 948, 951 (8th Cir. 1992)).

The record does not show Mr. Gomez Perez was arrested on any federal charge until September 2021. *See* Trial Tr. 181:7–14 (Ouse). The record also does not indicate he was served with a summons in connection with the federal charge, nor does Mr. Gomez Perez allege as much. Again, no facts support collusion between state and federal authorities. Accordingly, the speedy trial clock to file the indictment did not start until September 2021, *after* the indictment had already been filed in December 2019. Because his speedy trial claims lack merit, counsel did not err in failing raise them, and thus, counsel's performance was not deficient.

(5) Mr. Gomez Perez argues the Government's delay in charging him violated the applicable limitations period and prejudiced his defense, and his defense counsel should have moved to dismiss the indictment on this basis. ECF No. 173 at 28–30. Under 18 U.S.C. § 3282, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been

committed." 18 U.S.C. § 3282(a). Here, the offense was committed March 14, 2019. ECF No. 1. The indictment was filed December 5, 2019, *id.*, well within § 3282's five-year limitations period.

Mr. Gomez Perez also appears to make a constitutional argument that the delay between the offense and the indictment prejudiced his defense. ECF No. 173 at 28–30. In making such an argument, "[t]he defendant bears the burden of proving actual prejudice flowing from the pre-indictment delay." *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986). "To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government." *Id.* "Speculative or conclusory claims alleging 'possible' prejudice as a result of the passage of time are insufficient." *Id.* at 1289–90. In essence, "the defendant must demonstrate that the prejudice *actually* impaired his ability to meaningfully present a defense." *Id.* at 1290. Mr. Gomez Perez identifies no reasons why delay prejudiced his defense. He makes the bare, general assertion that it was harmful, *see* ECF No. 173 at 28–30, but this is not sufficient. Counsel was not deficient for failing to move to dismiss the indictment based on a charging delay.

(6) Mr. Gomez Perez claims he was subjected to prosecutorial misconduct, and his counsel was ineffective because he did not challenge the alleged misconduct. ECF No. 172 at 5, ECF No. 173 at 31–34. Mr. Gomez Perez contends the Government submitted false evidence including the Hennepin County search warrants and inventory return relating to the auto shop search, Mot. Exs. 1, 2, the exhibit containing *Miranda* warnings in Spanish with Mr. Gomez Perez's signature, Gov't Ex. 19; Mot. Ex. 3, and Mr. Gomez

Perez's March 15, 2019 police interview statements, Gov't Exs. 16A, 16B; Mot. Exs. 4A, 4B. ECF No. 173 at 33, 35.

Mr. Gomez Perez claims the Hennepin County search warrants and inventory return were fabricated. *Id.* at 31–33. Mr. Gomez Perez sent a letter to Hennepin County seeking documentation of the warrants and inventory return and did not receive a satisfactory response. ECF No. 172-1 at 44–49; ECF No. 173 at 34–35. Specifically, Hennepin County indicated it understood Mr. Gomez Perez to be attempting to file documents, rather than seeking to retrieve them. *See* ECF No. 172-1 at 49 ("We are unable to *file* these documents without a Hennepin County District Court file number on them." (emphasis added)). This response does not support the claim the warrants were fabricated.

Mr. Gomez Perez sent similar letters to Ramsey County and Dakota County, seeking documentation of search warrants issued in those counties as well. ECF No. 172-1 at 37–43; ECF No. 173 at 34–35. However, neither the Ramsey County nor the Dakota County search warrant was admitted into evidence, and thus, the counties' responses are immaterial.

Mr. Gomez Perez also argues the Government's trial exhibit containing *Miranda* warnings in Spanish with Mr. Gomez Perez's signature, and the Government's trial exhibits containing Mr. Gomez Perez's interview statements, were fabricated. ECF No. 173 at 31. In support of this, Mr. Gomez Perez claims he "was in ICE custody on March 15th[,] 2019, so he could not have been interviewed by officer Aguirre at the Minneapolis jail on March 15th." *Id.* at 37.

Magistrate Judge Leung (at the suppression hearing) and the Court (at trial) had an opportunity to review these exhibits upon their admission into evidence and found no reason to bar their admission. *See United States v. Gomez Perez*, No. 19-cr-313 (ECT/TNL), 2022 WL 2526194, at *1 (D. Minn. May 3, 2022), *R. & R. adopted*, 2022 WL 2208324 (D. Minn. June 21, 2022). Further, the exhibits state the March 15 interview ended at 1:16 p.m. Gov't Exs. 16A at 17:55–18:15, 16B; *see also* Mot. Tr. 45:10–12 (Aguirre) (stating the interview was around noon or 1 p.m.). It is clearly possible that Mr. Gomez Perez was interviewed during the afternoon of March 15, 2019, by Sergeant Aguirre and later entered ICE custody that same day.

(7) Throughout his thirty-nine-page brief, Mr. Gomez Perez makes a host of claims lacking evidentiary support and authority. For example, he claims he was subject to threats by officials, ECF No. 173 at 37, that the indictment against him "lacks authenticity," *id.* at 26, that Sergeant Aguirre committed perjury at the suppression hearing, *id.* at 31–32, 35, that several search warrants "do not comply with Fed. R. Crim. P. 41, nor Rule 4.1," *id.* at 34. Because these conclusory assertions lack sufficiently developed argument, they will not be addressed. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) ("Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." (citation omitted)); *see also United States v. Estrada*, No. 10-cr-248(2) (JRT/JJK), 2017 WL 1628876, at *1 n.2 (D. Minn. May 1, 2017) (stating, in a § 2255 case, that "[a]s the Court cannot determine the grounds for the claim, the Court declines to address the issue"). The same is true of arguments Mr. Gomez Perez raised for

the first time in his reply memorandum. *See* ECF No. 191. These arguments will not be addressed.

III

Section 2255 requires an evidentiary hearing on the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). But a motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see also Woods v. United States*, 567 F.2d 861, 863 (8th Cir. 1978) ("[M]erely stating unsupported conclusions will not suffice."). Mr. Gomez Perez's claims lack any evidentiary support, are contradicted by the record, and do not entitle him to relief under § 2255. An evidentiary hearing is not warranted.

Finally, district courts possess authority to issue certificates of appealability for § 2255 proceedings. *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). A substantial showing is "a showing that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). Mr. Gomez

13

Perez's § 2255 motion lacks any substantial, non-frivolous basis; he has raised no issues warranting further proceedings. He has not made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a certificate of appealability.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant Santos Gomez Perez's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [ECF No. 172] is **DENIED**.

2. Defendant's request for an evidentiary hearing is **DENIED**.

3. No certificate of appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 2, 2025

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court